## GREAT SOUTHERN OIL & REFINING ASS'N v. COOPER et al. (No. 8527.)

(Court of Civil Appeals of Texas. Dallas. April 23, 1921. Rehearing Denied May 28, 1921.)

**1. Appeal and error ⊜⟳1051(1) — Evidence harmless where fact otherwise shown.**

The admission of an unsigned resolution of a corporation was harmless where all the evidence tended to show there was in fact such a resolution.

**2. Evidence ⊜⟳471(25)—Testimony of secretary he performed duties not a conclusion.**

In an action for salary by the secretary of an association, testimony of plaintiff that during the time the salary sued for was accruing he performed all the duties of secretary he was called upon to perform was not inadmissible as a conclusion.

**3. Appeal and error ⊜⟳1050(1) — Evidence harmless where same testimony given without objection.**

In suit for salary as secretary of an association, error in the admission of plaintiff secretary's testimony that he performed all the duties he was called upon to perform was harmless to defendant association, where the same testimony was given by another witness without objection.

**4. Appeal and error ⊜⟳1056(2)—Error in exclusion of testimony immaterial.**

In suit by the secretary of an association for his salary, there was no material error in excluding testimony as to what disposition was made of the draft alleged to have been drawn in favor of the president of the association; such testimony bearing solely on the issues made by the cross-action.

**5. Contracts ⊜⟳152 — Words to be taken in common sense.**

In construing a contract, words are always to be taken in the common sense in which they are used.

**6. Evidence ⊜⟳461(1) — Parol evidence inadmissible to show intent of parties to unambiguous written contract.**

Where the language employed in a contract is unmistakable and certain, resort may not be had to parol evidence to show that the intention of the parties was other than that clearly expressed.

**7. Evidence ⊜⟳450(5)—Contract held not ambiguous to admit parol evidence.**

Provision in a contract between an association and an individual providing that the individual should pay the salaries of officers of the association was not ambiguous or uncertain to admit parol evidence as to the intention of the parties.

**8. Frauds, statute of ⊜⟳33(2)—Where purpose of promisor is to subserve own purpose, promise not within statute.**

The general rule is that, wherever the main purpose and object of the promisor is not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, though it may be in form a promise to pay the debt of another, and though performance of it may incidentally have the effect of extinguishing the liability of another.

**9. Frauds, statute of ⊜⟳33(2) — Promise of members of association made for own benefit to pay salary of secretary not within statute.**

Where the promise of members to a joint-stock association through its president to pay the salary of its secretary was not to guarantee or secure for the benefit of the secretary the debt he held against the association, but was to subserve their own purposes and promote their financial interests or gain by keeping the association from being abandoned by its president, a man of influence and ability, the promises of the members of the association to pay the debt were not within the statute, and they are estopped from setting up such defense.

Error from Dallas County Court; W. L. Thornton, Judge.

Action by Paul Cooper against the Great Southern Oil Refining Association and others. To review judgment for plaintiff, defendant Association brings error. Affirmed in part; reversed and remanded in part.

J. L. Goggans and B. O. Baker, both of Dallas, for plaintiff in error.

Cockrell, Gray, McBride & O'Donnell, H. P. Edwards, and Read, Lowrance & Bates, all of Dallas, for defendants in error.

TALBOT, J. Paul Cooper, plaintiff, brought this suit in the justice court of precinct No. 1, Dallas county, against Great Southern Oil & Refining Association, a joint-stock company, operating under a trust agreement, A. E. Shahan, L. S. Grant, C. McGaffey, M. M. Lee, O. B. Colquitt, C. U. Connellee, H. A. Wroe, L. S. Brotherton, Thomas W. Duncan, and M. E. Florence, to recover the sum of $200, alleged to be due as salary for services rendered as secretary of the defendant Great Southern Oil & Refining Association. From a judgment rendered in the justice court in favor of the plaintiff against all defendants except Florence an appeal was taken to the county court. In the county court the defendants Great Southern Oil & Refining Association, O. E. Colquitt, C. U. Connellee, H. A. Wroe, L. S. Brotherton, and Thomas Duncan by an amended answer, in addition to a general demurrer, a general denial, and special answer which we deem unnecessary to state, pleaded by way of cross-bill against their codefendant, A. E. Shahan, and R. D. Lindley, who was made a party defendant, that by virtue of the terms of a certain contract executed on June 12, 1918, the said Shahan, for himself and the said Lindley, expressly promised and agreed to pay, among other outstanding obligations of the Great

Southern Oil & Refining Association, the claim sued on by the plaintiff, and prayed that, in the event any judgment was rendered in favor of the plaintiff against defendants or either of them, they have judgment for a like amount over against the said A. E. Shahan and R. D. Lindley. Said defendants further alleged that subsequent to the execution and delivery of the written contract by the defendant A. E. Shahan above referred to, and on or about June 21, 1918, the said Shahan and Lindley verbally promised and agreed to pay the salaries of the officers of the Great Southern Oil & Refining Association, and that, by reason of the facts alleged, said Shahan and Lindley were estopped to deny the force and effect of such agreement. Said defendants further alleged that, if the written contracts set up in their pleadings did not provide for the payment of the salaries of officers, including the claim of the plaintiff, the same was omitted through accident and mutual mistake, and prayed that the contracts be reformed accordingly. When the introduction of the evidence was concluded, the court instructed the jury to return a verdict for the plaintiff, Paul Cooper, against the defendant Great Southern Oil & Refining Association and the sureties on its appeal bond from the justice court, Edgar L. Pike and I. L. Kramer, in the sum of $218.16, and against the plaintiff, Cooper, and in favor of the other defendants and against the Great Southern Oil & Refining Association and other defendants, and in favor of the defendants A. E. Shahan and R. D. Lindley on their cross-action. The plaintiff, Cooper, filed a remittitur of $18.16, and final judgment was entered decreeing that he recover from the Great Southern Oil & Refining Association the sum of $200, with interest thereon at the rate of 6 per cent., that the plaintiff take nothing by his suit against the other named defendants, and that the defendants Great Southern Oil & Refining Association, O. B. Colquitt, C. U. Connellee, H. A. Wroe, L. S. Brotherton, and Thomas Duncan take nothing by their cross-action against the defendants A. E. Shahan and R. D. Lindley. The Great Southern Oil & Refining Association and the sureties on its appeal bond from the justice court alone filed a motion for a new trial, which was overruled, and they excepted and gave notice of appeal. The appeal does not appear to have been perfected, but on June 9, 1920, they sued out a writ of error and assigned errors in this court for a reversal.

[1] The first assignment of error asserts that—

The court "erred in admitting in evidence, over the objection of the defendant Great Southern Oil & Refining Association, the resolution alleged to have been passed on March 27th, in regard to salaries, the objection urged thereto being that the said resolution was not signed by anybody."

The proposition is that—

"Before a resolution of a company or corporation is admissible in evidence it must be authenticated by the signatures of the president and secretary (or other proper officers) under the seal of the corporation."

In support of the assignment and proposition articles 1160 and 3713, Vernon's Sayles' Statutes are cited. The articles cited relate to corporations, and, since it was admitted at the trial that the Great Southern Oil & Refining Association is a joint-stock company, we are inclined to the opinion they have no application to such companies or associations. But the evidence seems to be uncontradicted that the resolution in question was shown to be the original resolution adopted by the board of directors of the Great Southern Oil & Refining Association at its meeting March 27, 1918. Besides, if the admission of the resolution was error, the error was harmless, inasmuch as all the facts show the resolution was shown by other undisputed evidence which was admitted without objection. Paul Cooper testified:

"I was employed by the directors of the Great Southern Oil and Refining Company in March to act as secretary. I acted as secretary of that concern two months. My salary was agreed upon. There was a resolution adopted at the final meeting of the board of directors with reference to my salary, and this resolution was to the effect that I be instructed to draw a draft on the treasurer for my two months' salary. I drew the draft and took it to Mike Murphy, the treasurer. He was present when the resolution was offered. The draft shown me is the one I drew. I presented it forthwith to the treasurer. The draft shown me is dated at Dallas, Tex., May 27th, and is for $200, payable to Paul P. Cooper, drawn by Paul P. Cooper, secretary of the Great Southern Oil & Refining Association, for two months' salary, drawn upon Mike Murphy, treasurer. I do not remember whether Mike Murphy remained treasurer of the new organization. J. W. Ogburn was president. There was a similar draft drawn with reference to J. W. Ogburn's salary at the time, and a similar resolution offered with reference thereto. This salary was never paid to me by the Great Southern Oil & Refining Association or by any other person. Nothing was being done by the Great Southern Oil & Refining Association during the two months. During the period of two months I performed all the duties I was called upon to perform as secretary of the Great Southern Oil & Refining Association."

J. W. Ogburn testified:

"My name is J. W. Ogburn, and I reside at Pecos, Reeves county, Tex. I was president of the Great Southern Oil & Refining Association for two months. I was the first president. Paul P. Cooper was secretary of the Great Southern Oil & Refining Association. He was secretary for two months, and I was president during that time. Paul P. Cooper was employed by the directors of the company at a salary of $100 per month. I resigned as president on

or about May 27, 1918, and Paul P. Cooper resigned at the same time. There was a meeting of the board of directors of Great Southern Oil & Refining Association at the time that Paul P. Cooper resigned as secretary. At the time he resigned as secretary there was due him $200 as salary. The board of directors were to pay him out of the first receipts from the sale of stock, or in any other way. Paul P. Cooper served as secretary during all the time that I served as president. During the time he served he performed all of the duties required of him as secretary of the association."

The material fact shown by the resolution was the amount of salary to be paid to the secretary of the association. J. W. Ogburn, who was president of the association at the time the resolution was adopted, and at the time that Paul P. Cooper was employed, was permitted to testify, without objection, that the directors of the association employed Paul P. Cooper at a salary of $100 per month, and at the time that Paul P. Cooper resigned as secretary there was due him $200 as salary. No testimony whatever was introduced contradicting the evidence showing the employment of Paul P. Cooper. Without considering for any purpose the resolution objected to, the evidence is amply sufficient to support the verdict and judgment.

[2, 3] The second assignment of error to the effect that the court erred in permitting the witness Paul Cooper to testify that during the time the salary sued for by him was accruing he performed all the duties he was called upon to perform, as secretary of the Great Southern Oil & Refining Association, because such statement was the conclusion of the witness, will also be overruled. The testimony was the statement of fact and properly admitted in evidence. But if its admission was error because the mere conclusion of the witness, no harm was done the defendant thereby for the reason that the same testimony was given by the witness Ogburn without objection. The plaintiff Cooper testified:

"I attended the meetings, had numerous conferences with Mr. Ogburn, and did everything I was called upon to do."

The witness Ogburn, at the instance of the plaintiff, testified without objection:

"Paul Cooper served as secretary during all the time that I served as president. During the time he served he performed all of the duties required of him as secretary of the association."

[4] The question, What disposition was made of the draft alleged to have been drawn in favor of J. W. Ogburn for his salary as president of Great Southern Oil & Refining Association? was asked by said association of the plaintiff, Paul Cooper, and, upon objections by the defendants Shahan and Lindley that the inquiry related to "outside matters, was not a part of the suit, was not pleaded, and would not be binding unless the conditions with reference to the Ogburn matter were the same," etc., was not allowed. It is not made to appear how the testimony sought to be elicited by the question would throw any light on the matter under investigation or assist the jury in arriving at a correct conclusion upon any branch of the case, and we think no material error, if any, was committed in excluding it. The testimony bore solely upon the issues made by the cross-action, and, if it was relevant to any issue involved in that branch of the case, it is, in our opinion, manifest that it is so lacking in probative force, in the absence of other testimony, that its exclusion furnishes no ground for a reversal.

[5-7] Nor do we think the court erred in holding that the provision in the contract between the Great Southern Oil & Refining Association and A. E. Shahan, in evidence, providing in substance that Shahan would pay the salaries of the officers of Great Southern Oil & Refining Association, related only to salaries thereafter accruing and had no reference to salaries already accrued, but then unpaid. There is no ambiguity in the contract, or uncertainty as to the intention of the parties from the language employed. Words are always to be taken in the common sense in which they are used, and where the language employed is unmistakable and certain resort may not be had to parol evidence to show that the intention of the parties was other than that clearly expressed. The rule that parol evidence is not admissible to vary the terms of a written contract is elementary, and the language used in the contract in question presents no exception to this general rule.

[8, 9] The seventh assignment of error is as follows:

"The court erred in holding that, under the facts offered in evidence by Great Southern Oil & Refining Association through its witness Colquitt, the defendants, Shahan and Lindley could properly urge the statute of frauds as against their alleged oral promises to pay the alleged debt herein sued for by the plaintiff, Cooper, and that they were not estopped from so doing."

We conclude this assignment is well taken. Shahan and Lindley were stockholders and directors of the Great Southern Oil & Refining Association, and the evidence would authorize the finding that, while they were such officers and subsequent to the execution of the written contract mentioned, Shahan and Lindley entered into an oral contract with the association whereby they agreed to pay the salaries of the officers of the associa-

tion, including the salary of the plaintiff involved in this suit. Besides, there is substantial evidence to the effect that Shahan and Lindley were the moving spirits in the whole organization; that the association was becoming involved in financial difficulties; that Shahan and Lindley were exerting themselves to secure a former governor of this state, as its president and head, upon the theory that, with his prestige and financial ability, a wreck of the organization in which they were financially interested might be avoided; that, upon the assurance of Shahan and Lindley that there were no outstanding liabilities against the association, Ex Governor Colquitt was induced to become a stockholder and president of the association; that very soon thereafter various creditors began to press their claims, and threatened to place the association in the hands of a receiver, and that Mr. Colquitt then told Shahan and Lindley that he would get out and have nothing more to do with the association unless they took care of its debts then due, including the plaintiff's claim; that thereupon Shahan and Lindley made the verbal agreement mentioned to pay plaintiff's claim and other items of indebtedness of the association in consideration of Mr. Colquitt remaining the president and head of the association. The general rule relating to the application of the statute of frauds is that, wherever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another. Lemmon v. Box, 20 Tex. 329. That Shahan and Lindley would profit by the retention of O. B. Colquitt as the president and head of the Great Southern Oil & Refining Association and the payment of its debts to the plaintiff Cooper is manifest. Obviously, therefore, their promise to pay that debt was to subserve a purpose of their own and was not in contravention of the statute of frauds. Evidently their leading object was not to guarantee or secure for the benefit of plaintiff the debt he held against the association, but it was to subserve their own purposes and promote their financial interests or gain. It follows from what we have said that the judgment in favor of the plaintiff Cooper against the Great Southern Oil & Refining Association should be affirmed, and that the judgment in favor of Shahan and Lindley that said association take nothing against them on its cross-action should be reversed, and cause remanded for a new trial on said cross-action, and it is accordingly so ordered.

Affirmed in part, and reversed and remanded in part.